<u>**FOR PUBLICATION**</u>

lml/jar

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

In re:

MARCELINO EMILO RAMIREZ and
TONI LEE RAMIREZ                                    Case No. 03-4122-JAR

Bankruptcy Case No. 01-42119-13

                     Debtors.
———————————————————————

MARCELINO EMILIO RAMIREZ and
TONI LEE RAMIREZ,

                     Plaintiffs/Appellants,

v.                                                  Adv. No. 01-7122

HOUSEHOLD FINANCE CORPORATION III,

                     Defendant/Appellee.
———————————————————————

<u>**MEMORANDUM AND ORDER**</u>

This is an appeal from an order of the bankruptcy court relating to the debtors' right

to rescind a home mortgage transaction for disclosure violations under the Truth in Lending Act (the

"TILA") and resulting statutory damages.  For the reasons set forth below, the decision of the

bankruptcy court is affirmed.

**I.      Background**

The relevant facts are not disputed.  In February 2000, Marcelino Ramirez entered into a non-purchase money loan transaction with Household Finance Corporation III ("Household"), for $113,061.94.  Mr. Ramirez alone signed the promissory note, and both he and his wife, Toni Ramirez, signed a mortgage on their principal dwelling to secure the note.  The transaction between the Ramirezes and Household was subject to the Ramirezes' right of rescission as described by § 1635 of the TILA[1] and Regulation Z.[2]

On September 1, 2001, counsel for the Ramirezes sent correspondence to Household approximately one month after they filed a joint Chapter 13 bankruptcy petition, stating that they were exercising their right to rescind the loan transaction under the TILA.  Household took no action on the Ramirezes' notice of rescission.

On November 2, 2001, the Ramirezes filed an adversary proceeding against Household in their pending Chapter 13 bankruptcy case seeking relief under the TILA, including rescission of the loan transaction and the imposition of statutory damages against Household.  The bankruptcy court entered an order granting summary judgment in this case and a companion case, *Patricia Joan Merriman v. Beneficial Mortgage Co. of Kansas, Inc.*, Adversary No. 01-7142 ("the Order").

The bankruptcy court addressed two issues in the Order relative to the Ramirezes.  First, the bankruptcy court determined that rescission of the loan was appropriate and that the court was authorized to modify the parties' respective reciprocal tender obligations under § 1635.  Thus, the bankruptcy court concluded that Household did not have to terminate its security interest and that the

---

[1] 15 U.S.C. § 1635.

[2] 12 C.F.R. § 226.23.

2

amount Mr. Ramirez owed Household as a result of the rescission, was secured by Household's mortgage lien until paid.  Second, the bankruptcy court determined the amount of civil damages due the Ramirezes based on Household's improper notice and refusal to honor their demand for rescission pursuant to 15 U.S.C. § 1640.

The Ramirezes filed a Notice of Appeal with respect to the Order and Household filed a Cross-Appeal.  Household subsequently withdrew its appeal.[3]

## II.     Appellate Jurisdiction

The parties have opted to have the appeal heard by this Court.[4]  The appeal was timely filed by the debtors, and the bankruptcy court's Order is "final" within the meaning of 28 U.S.C. § 158(a)(1).[5]

## III.    Standard of Review

On appeal from the bankruptcy court, the district court sits as an appellate court.[6]  The standards generally governing review of the bankruptcy court's decision are well-settled: findings of fact are not to be set aside unless clearly erroneous; conclusions of law are reviewed *de novo*.[7]  A finding is clearly erroneous if it is unsupported by any facts of record or if the district court, after reviewing all the evidence, is left with the definite and firm belief that a mistake was made.[8]

---

[3]Case No. 03-4123 (Doc. 5).

[4]*See* 28 U.S.C. § 158(c); B.A.P. 10th Cir. R. 8001-1(a), (d).

[5]*See* Fed. R. Bankr. P. 8001-8002.

[6]*See* 28 U.S.C. § 1334(a).

[7]*Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849, 851 (10th Cir. 1990); *In re Barber*, 191 B.R. 879, 882 (D. Kan. 1996); *see* Fed. R. Bankr. P. 7052, 8013.

[8]*Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1536 (10th Cir. 1990).

## IV.     Discussion

The Ramirezes raise four issues on appeal addressing whether the bankruptcy court: (1) erred in failing to award them twice the amount of any finance charge in connection with the transaction, with a maximum award of $2,000, for each violation of the TILA, and by reducing the amount owed Household by that amount; (2) had discretion to condition or modify the consequences of the debtors' rescission as specified in the TILA and Regulation Z; (3) was required to first find that Regulation Z is an irrational interpretation of the TILA before it could condition or modify the debtors' remedy after a proper exercise of their right to rescind the transaction; and (4) erred by refusing to void the lender's mortgage on the debtors' home.

The Court notes that it recently affirmed the bankruptcy court's Order in *Merriman v. Beneficial Mortgage Co. of Kansas, Inc.*, 03-4121-JAR, September 8, 2005, which involved many of the same issues raised by the Ramirezes in this appeal.  The Court adopts by reference its analysis in that case, and shall rely upon it in ruling in this case.

### *TILA Disclosures and Remedies*

Congress enacted the TILA to regulate the disclosure of the terms of consumer credit transactions in order "to aid unsophisticated consumers and to prevent creditors from misleading consumers as to the actual costs of financing."[9]  Disclosure allows consumers to compare different financing options and their costs.[10]  Indeed, the TILA recognizes that in the marketplace of lending and

---

[9]*Morris v. Lomas & Nettleton Co.*, 708 F. Supp. 1198, 1203 (D. Kan. 1989) (citing *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 363-69 (1973)).

[10]15 U.S.C. § 1601(a).

4

financing, consumers should be armed with the appropriate information to make beneficial and sound decisions about the sources and terms of financing arrangements. To encourage lender compliance, TILA violations are measured by a strict liability standard, so even minor or technical violations impose liability upon the creditor.[11] The consumer-borrower can prevail in a TILA suit without showing that he or she suffered any actual damage as a result of the creditor's violation.[12]

In TILA transactions such as this, involving non-purchase-money loans secured by consumer-borrowers' homes, the borrower has a right to rescind the transaction, established by TILA § 1635. The right to rescind continues for three days so long as the lender gives the borrower the disclosures required by the TILA and a notice of the right to rescind; the right is extended up to three years if the lender fails to give the disclosure and notice. Section 1635(a) provides in relevant part:

> Except as otherwise provided in this section, in the case of any consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, **the obligor shall have the right to rescind the transaction** until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, **by notifying the creditor, in accordance with regulations of the Board, of his intention** to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The **creditor shall also provide**, in accordance with regulations of the Board, **appropriate forms for the obligor to exercise his right to rescind** any transaction subject to this section.[13]

---

[11]*See, e.g., Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir. 1983) ("To insure that the consumer is protected, as Congress envisioned, requires that the provisions of [the TILA and Regulation Z] be absolutely complied with and strictly enforced").

[12]*Herrera v. First N. Sav. & Loan Ass'n*, 805 F.2d 896, 900 (10th Cir. 1986).

[13]15 U.S.C. § 1635(a) (emphasis added).

**A.      Calculation of Civil Damages for the Notice and Rescission Violations**

The bankruptcy court found that Household violated the TILA in two ways: (1) in failing to

provide adequate disclosure to Mrs. Ramirez of her rescission rights by not providing her with a copy

of the Notice (the "Notice Violation"); and (2) in failing to respond to the Ramirezes' demand for

rescission within 20 days (the "Rescission Violation").  The bankruptcy court imposed the minimum

damages allowed by § 1640(a)(2)(A)(iii), awarding $200 for each violation for a total of $400, and

reduced Household's post-rescission claim against the Ramirezes by that amount.  The Ramirezes

contend that the bankruptcy court erred, because it was required to award them the maximum $2,000

in statutory damages for each violation of the TILA.  They further argue that the civil damages due as a

result of Household's violations should be paid in cash by Household, rather than credited against the

post-rescission claim due Household.

*1. Amount Awarded*

Under TILA § 1640(a)(2)(A)(iii), statutory damages may be awarded to the Ramirezes for the

TILA disclosure and rescission violations discussed above.  That section provides in pertinent part:

> Except as otherwise provided in this section, any creditor who fails to
> comply with any requirement imposed under this part, including any
> requirement under section 1635 of this title, or part D or E of this
> subchapter with respect to any person is liable to such person in an
> amount equal to the sum of –
>> (1) any actual damage sustained by such person as a
>> result of the failure;
>
> [and]
>> (2)(A) . . . (iii) in the case of an individual action relating
>> to a credit transaction not under an open end credit
>> plan that is secured by real property or a dwelling, not

less than $200 or greater than $2,000; . . . [14]

In light of "the substantial reduction of Household's claim as a result of the offsets," the bankruptcy court imposed the minimum penalty for these violations, for a total of $400, which it credited against Household's claim against the Ramirezes.[15]

The Ramirezes argue that § 1640 must be read to require a court to award double the "finance charge" as used in subparagraph (i) or the maximum amount set forth in subparagraph (iii), in order to determine the amounts properly assessed under subparagraph (iii). Household argues that the bankruptcy court had authority to exercise its discretion to award damages between $200 and $2,000.[16]

The Court agrees with Household. There is no ambiguity as to how statutory damages should be awarded in this case. Subparagraph (iii) plainly states that damages "not less than $200 or greater than $2,000" may be awarded. The plain language of subparagraph (iii) imposes no obligation to impose the lesser of : (1) the maximum penalty under (iii), or (2) double the "finance charge" under (i). The bankruptcy court's award was consistent with that provision and is affirmed.

2. *Manner of Payment*

---

[14]15 U.S.C. § 1640(a)(2)(A)(iii).

[15]*Order* at 22-23.

[16]Household argues alternatively, in footnote 2 of its brief, that the Ramirezes' claim for damages related to the Notice violation is barred by the applicable statute of limitations. Household did not preserve a statute of limitations affirmative defense in the bankruptcy court proceedings, and will not be allowed to raise it here, for the first time, on appeal. Moreover, Household's argument ignores the second sentence of 15 U.S.C. § 1640(e), which permits the Ramirezes to recover statutory penalties "as a matter of defense by recoupment," which is not barred by the statute of limitations.

The Ramirezes' corollary issue is that the bankruptcy court improperly set off or recouped the statutory damages assessed against Household for its Rescission Violation.  The Ramirezes concede that the Notice Violation award was properly set off against Household's post-rescission claim.  But, the Ramirezes argue that the Rescission Violation damages cannot be set off against Household's claim because the claims do not arise out of the same transaction or occurrence.   The Court disagrees.

Generally, recoupment, while similar to setoff, is a separate, equitable doctrine that is not subject to the setoff provisions and limitations of section 553 of the Bankruptcy Code.[17]  Rather, a creditor is allowed to "recoup" its claim against the debtor or the bankruptcy estate so long as the claims of creditor and debtor arise out of the "same transaction," without regard to the timing and mutuality restrictions of setoff.[18]  Household's post-rescission claim as determined by the bankruptcy court did not arise in February 2000; it arose at the same time and as part of the same transaction that the Ramirezes' claim arose.  Under § 1635(b), the Ramirezes were obligated to tender property to Household upon their rescission of the loan and after Household had returned all costs and interest.  As recognized by the bankruptcy court, the parties had "reciprocal payment obligations under the TILA and § 1635(b) and Regulation Z § 226.23(d)(2) and (3)."[19]  The Ramirezes' claim for damages accrued as a part of the Rescission Violation and Household's claim for the reciprocal payment obligation arose out of the same transaction, that is, the Ramirezes' rescission.  Accordingly, the

---

[17]11 U.S.C. § 553.  Setoff is allowed where (1) the debts involved are between the same parties standing in the same capacity, (2) the debts are valid and enforceable, and (3) the debts are mutual, though they need not arise out of the same transaction. *In re Davidovich*, 901 F.2d at 1533.  In the bankruptcy context, the claims must be pre-petition debts. *In re Peterson Distrib., Inc.*, 82 F.3d 956, 963 (10th Cir. 1996).

[18]*Davidovich*, 901 F.2d at 1537; *Peterson Distrib.*, 82 F.3d at 959.

[19]*Order* at 21.

obligations were in fact part of the same transaction for purposes of recoupment, and the bankruptcy court properly exercised its discretion to deduct the Rescission Violation damages from the post-rescission balance due Household.  The bankruptcy court is affirmed as to this issue.

### B.       Voiding of Security Interest Under the TILA

In TILA transactions such as this, § 1635(a) creates the right of rescission; § 1635(b) explains the effect that rescission has on the consumer-borrower and lender.  In short, upon rescission, the borrower is not liable for any finance or other charge, and any security interest given by the borrower becomes void.[20]  After giving Household notice of rescission and receiving no response, the Ramirezes filed an adversary proceeding in bankruptcy court, seeking rescission and damages.  The bankruptcy court ordered that the $17,308.56 in closing costs and fees Household charged the Ramirezes, plus all amounts paid on the loan since the closing, $15,243.52, for a total of $32,552.08, be subtracted from the principal amount of the loan, $113,061.94, leaving a balance of $80,509.86 due Household.

The Ramirezes contend that the bankruptcy court erred in ordering that this balance would remain secured by Household's mortgage lien until paid.  The Ramirezes argue that § 1635(b) mandates that the security interest become void upon rescission, such that the balance due is unsecured and subject to compromise, discharge, or both in the Chapter 13 bankruptcy proceeding. The Ramirezes argue that § 1635(b) mandates the voiding of the security interest irrespective of the borrower's payment of the principal balance due.  Section 1635(b) provides:

> When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest

---

[20]15 U.S.C. § 1635(b).

9

given by the obligor, including any such interest arising by operation of law, becomes void upon rescission.  Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.  If the creditor has delivered any property to the obligor, the obligor may retain possession of it.  Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value.  Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor.  If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. **The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.**[21]

The Ramirezes suggest that the plain language of § 1635(b) effects a voiding of the security interest upon the giving of notice of rescission.  The statute does not state, however, that the security interest becomes void upon the giving or receipt of notice.  Rather, the statute states that the security interest "becomes void upon rescission."  Nothing in the statute suggests that giving notice of rescission is synonymous with "upon rescission."  Section 1635(b) expressly becomes operative "[w]hen an obligor exercises his right to rescind under subsection (a) . . . ."  Section 1635(a) goes on to provide that "the obligor shall have the right to rescind . . . by notifying the creditor . . . of his intention to do so . . . . .  The creditor shall also provide . . . appropriate forms for the obligor to exercise his right to rescind . . . ."  Read together, these two subsections of § 1635 provide that the borrower exercises his right to rescind by giving notice; but the security interest becomes void only upon rescission.  The plain

---

[21]15 U.S.C. § 1635(b) (emphasis added).

language of the statute indicates that exercising the right to rescind is a discrete event; and rescission is a separate discrete event.   If the drafters intended for exercise of the right to rescind to be rescission, they would not have used different terms for the same event.[22]

Nor does the language of Regulation Z,[23] the statutory mandate for courts to act with respect to the TILA, support the Ramirezes' argument that the security interest is void upon notice or the exercise of the right to rescind.  Regulation Z mirrors § 1635(b) and details the rescission process.[24]  Whereas the statute states that the security interest becomes "void upon rescission," Regulation Z states that the security interest becomes void "[w]hen a consumer rescinds a transaction."  Although this language in

---

[22]*See Qwest Commc'ns Int'l, Inc. v. F.C.C.*, 398 F.3d 1222, 1232-33 (10th Cir. 2005) (Explaining that generally, when Congress includes a specific term in one provision of a statute, but excludes it in another, it is presumed that the term does not govern the sections in which it is omitted) (citations omitted).  The Court sees no reason to disturb this cannon of statutory construction here.

[23]12 C.F.R. § 226.23(d).

[24]**Sec. 226.23(d) Effects of rescission.**

> (1)    When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.
>
> (2)    Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.
>
> (3)    If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section.  When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value.  At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business.  If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.
>
> (4)    The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order.

the regulation is less than clear, it does not indicate that a "consumer rescinds" merely by exercising the right to rescind through notice.  As Judge Crow noted in *Quenzer v. Advanta Mortgage Corp. U.S.A. (In re Quenzer)*,[25] rescission does not mean an annulment that is definitively accomplished by unilateral pronouncement.[26]

In *Yamamoto v. Bank of New York*,[27] the Ninth Circuit rejected the very argument that the Ramirezes make here, that the notice of rescission had the automatic and immediate effect of voiding the loan transaction.  The Ninth Circuit observed that the borrower was essentially arguing that rescission could be accomplished automatically upon a borrower's decision to rescind, communicated by a notice of rescission, and without regard to whether the law permits him to rescind upon the grounds asserted.[28]  The court noted that, "this makes no sense when, as here, the lender contests the ground upon which the borrower rescinds."[29]  "Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any."[30]

The First Circuit has observed under similar circumstances that "[n]either the statute nor the regulation establishes that a borrower's mere assertion of the right of rescission has the automatic effect

---

[25] 288 B.R. 884 (D. Kan. 2003) ("*Quenzer III*").

[26] *Id.* at 888 (citing *Ray v. Citifinancial, Inc.*, 228 F.Supp. 2d 664 (D. Md. 2002)).

[27] 329 F.3d 1167 (9th Cir. 2003).

[28] *Id.* at 1172.

[29] *Id.*

[30] *Id.*

of voiding the contract."[31]  This occurs either because the lender acknowledges that the right of rescission is available or because the appropriate decision maker has so determined.[32]  In this case, Household ultimately conceded that it did not give Mrs. Ramirez the appropriate Notice required by the TILA, and that the Ramirezes were entitled to try to rescind the transaction.  This concession was not made, however, until Household had failed to respond to the notice of rescission within 20 days and the Ramirezes had filed an adversary proceeding affirmatively seeking a determination by the bankruptcy court that rescission was proper and that they were entitled to statutory damages for Household's TILA violations.

Although the bankruptcy court declined to void Household's mortgage lien, it invited this Court to reverse that decision, in part because the bankruptcy court agreed with the Ramirezes' position that the security interest was void before, and irrespective of, the seriatim obligations of borrower and lender and borrower's payment obligation, spelled out in § 1635(b) and Regulation Z.[33]  As discussed above, because the plain language of § 1635(b) and Regulation Z demonstrates that rescission is not automatic upon the exercise of the right to rescind by giving notice, this Court affirms, in part because the mortgage lien was not automatically void upon the Ramirezes giving notice to Household.

---

[31]*Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002); c*f. Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1141-42 (11th Cir. 1992) (noting that rescission is automatic, but rejecting the argument that § 226.23(d)(4)'s lack of reference to subsection (d)(1) restricts a court's ability to impose conditions that run with the voiding of a lender's security interest upon terms that are equitable).

[32]*Large*, 292 F.3d at 54-55.

[33]In finding that Household's mortgage lien was not void, Bankruptcy Judge James A. Pusateri stated that he felt "constrained to follow" District Judge Crow's decision in *Quenzer III*, which reversed Judge Pusateri's decision on these same issues.  *See* 266 B.R. 760 (Bankr. D. Kan. 2001) ("*Quenzer I*"); 274 B.R. 899 (Bankr. D. Kan. 2001) ("*Quenzer II*").

C.    **Conditioning Voiding of Security Interest on Payment**

The Ramirezes contend that the bankruptcy court had no authority to condition the voiding of

Household's mortgage lien on Mr. Ramirez satisfying his obligation to pay Household the principal

balance due.  Noting that the district court had previously reversed the bankruptcy court on this issue in

*Quenzer III*,[34] the bankruptcy court stated that it felt constrained to follow the district court on this issue

as well, but invited this Court to reverse, in favor of the Ramirezes' position.  This Court affirms the

bankruptcy court's decision, concluding, as Judge Crow concluded in *Quenzer III*, that a court has

authority to condition voiding of the security interest on satisfaction of payment by the borrower.

Similar to their analysis concerning when the security interest becomes void, the Ramirezes

argue that the language of § 1635(b) and Regulation Z mandates the voiding of the security interest and

precludes judicially imposed conditions or modifications.  They contend that language in the statute and

regulation concerning court ordered modifications to the rescission process does not apply to the

voiding of the security interest.  The last sentence of § 1635(b) states, "[t]he procedures prescribed by

this subsection shall apply except when otherwise ordered by a court."[35]  The Ramirezes contend that

the voiding of the security interest is not a "procedure," but is substantive relief accorded by this statute.

Regulation Z states in pertinent part, "[t]he procedures outlined in paragraphs (d)(2) and (3) of this

section may be modified by court order."  The Ramirezes contend that this language means that the

---

[34] 288 B.R. at 884.

[35] 15 U.S.C. § 1635(b) (emphasis added).  In 1980, Congress amended § 1635 by adding the last section to subsection (b), specifically giving the courts authority to change at least part of what happens when the borrower rescinds. *See* Truth in Lending Simplification and Reform Act, Title VI of Depository Institutions Deregulation and Monetary Control Act of 1980, Pub. L. No. 96-221, § 612(a)(4), 1980 U.S.C.C.A.N. (94 Stat.) 132, 175 (hereinafter "TILA Simplification Act").

14

court may modify only the lender's obligation to return money in § 226.23(d)(2) and the borrower's obligation to tender money or property in § 226.23(d)(3), but the court may not modify the voiding of the security interest in § 226.23(d)(1).

The premise of the Ramirezes' position is that the voiding of the security interest is substantive relief accorded by § 1635(b) and Regulation Z, rather than a procedural step in the rescission process. Indeed, in inviting this Court to reverse its decision, the bankruptcy court urged that the voiding of a lender's security interest is substantive and punitive, a consequence of the lender's violation of the TILA.  The voiding of the security interest, however, is but a step in the rescission process; it is not the substantive relief, nor is it punitive.  Rather, the TILA's express punitive measures are that the lender loses its finance charges for the period of time that the borrower enjoyed the loan proceeds or property, which can range from three days to three years, and that the lender be subject to a fine for each violation.  The voiding of the security interest is neither punitive in design nor effect.

Rescission, whether statutory or common law, is an equitable remedy.  Its relief, in design and effect, is to restore the parties to their pre-transaction positions.  The TILA authorizes the courts to apply equitable principles to the rescission process.  As the court observed in *Quenzer III*, within the context of the TILA, rescission is a remedy that restores the *status quo ante*.[36]  And, as the Eleventh Circuit noted in *Williams v. Homestake Mortgage Co.*,[37] the last  sentence of § 1635(b), which states that "[t]he procedures prescribed by this subsection shall apply except when otherwise ordered by a

---

[36]288 B.R. at 888.

[37]968 F.3d 1137 (11th Cir. 1992).

court," is a reflection of this equitable goal.[38]   The Eleventh Circuit further observed, "[t]he sequence of rescission and tender set forth in § 1635(b) is a reordering of common law rules governing rescission," which "place[s] the consumer in a much stronger bargaining position than he enjoys under the traditional rules of rescission."[39]   The TILA's statutory rescission procedures do not alter the equitable nature of the rescission remedy, nor the goal of returning the parties most nearly to the position they held prior to entering into the transaction.[40]

The Ramirezes' focus on the voiding of the security interest as a substantive, punitive measure is largely based on the TILA provision that the security interest becomes void, and the Regulation Z provision that within 20 days after receiving notice of rescission, the lender must return money or property to the borrower and "take any action necessary to reflect the termination of the security interest."[41]   They argue that the seriatim reciprocal obligations of lender and borrower provided in the statute and fleshed out in Regulation Z, make clear that the lender must take steps to terminate the security interest *before* the borrower is required to tender money or property to the lender.   Indeed, the lender's obligation to return money or property (i.e., the finance charge) and take action to reflect termination of the security interest is found in § 226.23(d)(2) of Regulation Z, while the borrower's payment obligation comes later, in § 226.23(d)(3).

---

[38]*Id*. at 1140.

[39] *Id.* (quoting Note, *Truth-in-Lending: Judicial Modification of the Right of Rescission*, 1974 Duke L.J. 1227, 1234 (1974)).

[40]*Id*.

[41]12 C.F.R. § 226.23(d)(2).

The order of reciprocal obligations, however, is not indicative that the voiding of the security interest is substantive.  Rather, this order of reciprocal obligations serves to place the borrower who seeks rescission in a position to obtain financing from another lender.  Indeed, as the Eleventh Circuit has observed, TILA's rescission process places the borrower in a stronger position than under traditional rules of rescission.[42]  The TILA requires the lender to return the finance charge and take steps to terminate the security interest first, before requiring the borrower to pay off the principal balance.  This allows the borrower to seek a new loan, having the benefit of cash in the amount of the refunded finance charge, which might be used for loan fees or charges.  And, the borrower has property to pledge as security to the new lender, unencumbered with a lien from the rescinded lender, because the TILA requires the lender to terminate its security interest.  With these benefits accorded under TILA's rescission process, the borrower has the means to obtain a new loan, and thus the means to repay the principal balance due on the rescinded loan.

The TILA recognizes, in effect, that a borrower who wishes to rescind a loan may not have the means to repay the principal balance of the loan without first securing new financing.  The TILA's requirement that the lender terminate the security interest before the borrower pays off the principal balance due, simply recognizes the reality that a consumer-borrower rescinding a loan, may need alternative financing to pay off that loan.

This underlying consideration, to allow the borrower the means to obtain financing to pay off the rescinded loan, is further illustrated in Regulation Z's placing time limits on the lender's obligations,

---

[42]*Williams*, 968 F.3d at 1140.

but no time limit on the borrower's obligation to repay the principal balance due.  Regulation Z §

226.23(d)(2) requires that upon receiving notice of rescission, within 20 days the lender must refund all

finance charge and fees and take action to terminate the security interest, yet the next seriatim

obligation, the borrower's obligation to tender the principal balance due in

§ 226.23(d)(3), has no time limit.  This is surely in recognition that the borrower needs time to obtain

alternative financing.  Section 226.23(d)(3) requires the lender to accept the borrower's tender of

money within 20 days after tender.  By placing time limits on the lender's obligations, but no time limits

on the borrower's obligation to repay the principal balance, and by requiring that the lender refund

finance charges and terminate the security interest first, Regulation Z effectuates rescission in a timely

fashion, recognizing that the borrower needs the time and the means to obtain alternative financing.

Because the requirement that the lender terminate the security interest merely serves to provide

a means for the rescinding borrower to obtain alternative financing, the voiding of the security interest is

appropriately characterized as a procedural step in the rescission process, not substantive or punitive

relief.  Given that it is a merely part of the rescission procedures,

§ 1635(b) permits the court to condition or modify the voiding of the security interest, stating  "[t]he

procedures prescribed by this subsection shall apply except when otherwise ordered by a court."[43]

Notably, in 1980, Congress amended § 1635 by adding this last sentence to subsection (b), specifically

giving the courts authority to change at least part of what happens when the borrower rescinds.[44]  But

even prior to the statute's amendment, the majority of circuit courts that addressed this issue permitted

---

[43]15 U.S.C. § 1635(b).

[44]*See* TILA Simplification Act, § 612(a)(4), 1980 U.S.C.C.A.N. (94 Stat.) at 175.

judicial modification of the statutory rescission process.[45]  The Tenth Circuit had previously held in

*Rachbach v. Cogswell*[46] "that courts can alter the TILA's statutory scheme because rescission is an

equitable remedy."[47]

The Ramirezes ask the Court to reverse the ultimate conclusion reached by the bankruptcy

court and order that Household's lien be voided, effectively allowing them to pay nothing or a very

small portion of the post-rescission amount calculated by the bankruptcy court.  Although the Tenth

Circuit has not ruled on this precise issue, the majority of courts addressing this issue have held that the

TILA authorizes them to modify the procedure for effecting the avoidance of a lender's mortgage on

the tender of the post-rescission amount by the borrower.[48]  In *Quenzer III*,  Judge Crow concluded,

based on the analysis in *Rachbach*, as well as the statutory revisions to the TILA and Regulation Z, that

"although a debtor's tender back is not mandated as a prerequisite to rescission, it may be an

appropriate condition attached thereto under certain circumstances because of the equitable nature [of]

that statutory remedy."[49]  Since then, bankruptcy courts in Kansas and Oklahoma have followed

*Quenzer III* in concluding that courts do have equitable discretion to modify rescission under the

_____

[45]*Rudisell v. Fifth Third Bank*, 622 F.2d 243 (6th Cir. 1980); *Powers v.Sims and Levin*, 542 F.2d 1216 (4th Cir. 1976); *Rachbach v. Cogswell*, 547 F.2d 502 (10th Cir. 1976); *LaGrone v. Johnson*, 534 F.2d 1360 (9th Cir. 1976). *Contra Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (refusing to permit judicial modification).

[46]847 F.2d at 502.

[47] *Id*. at 505.

[48]*See, e.g., Yamamoto*, 329 F.3d at 1167; *Williams*, 968 F.3d at 1140;  *FDIC v. Hughes Development Co.*, 938 F.2d 889, 890 (8th Cir. 1991), *cert. denied*, 502 U.S. 1099 (1992); *Quenzer III*, 288 B.R. at 888 (citing Black's Law Dictionary on Westlaw (Garner, Ed., 7th ed. 1999), defining "procedure" as "1. A specific method or course of action");

[49]288 B.R. at 888 (citing *Rachbach*, 847 F.2d at 505).

TILA.[50]

Indeed, in the context of bankruptcy, where the borrower seeks to compromise or discharge the debt on the rescinded loan, judicial modification of the rescission process is well justified.  At the time the Ramirezes gave notice of rescission, the Federal Reserve Board of Governors ("FRB") Official Staff Interpretation of Regulation Z provided, "[t]he procedures outlined in § 226.23(d)(2) and (3) may be modified by a court.  For example, when a consumer is in bankruptcy  proceedings and prohibited from returning anything to the creditor, or when the equities dictate, a modification might be made."[51]

And since the parties submitted their briefs in this appeal, the FRB has made "technical revisions" to its commentary with respect to § 226.23(d)(4), effective April 1, 2004.  The revised Official Staff Commentary for Regulation Z § 226.23(d)(4) reads as follows:

> 1.  Modifications.  The procedures outlined in § 226.23(d)(2) and (3) may be modified by a court.  For example, when a consumer is in bankruptcy proceedings and prohibited from returning anything to the creditor, or when the equities dictate, a modification might be made. **The sequence of procedures under § 226.23(d)(2) and (3), or a court's modification of those procedures under § 226.23(d)(4), does not affect a consumer's substantive right to rescind and to have the loan amount adjusted accordingly**.  Where the consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed before establishing the procedures for the parties to tender any money or property.[52]

This revised Official Staff Interpretation, which the FRB deems "technical,"does not correspond to any

---

[50]*In re Stanley*, 315 B.R. at 602; *In re Webster*, 300 B.R. 787 (Bankr. W.D. Okla. 2003).

[51]12 C.F.R. Pt. 226, Supp. I, Paragraph 23(d)(4).

[52]*Id*. (2004) (emphasis added).

amendment of the regulation itself.[53]   The Court notes that while commentators generally supported the revision, industry and consumer groups asked the FRB staff to address an issue not raised by the proposal, namely, whether a court could condition rescission and voiding of the lender's security interest on tender by the borrower.[54]   Comment 23(d)(4) did not address this issue, and instead clarifies only that the sequence of procedures under § 226.23(d)(2) and (3), or a court's modifications of those procedures, under (d)(4), does not affect consumers' substantive right to rescind.[55]

When an agency charged with enforcing a statute has promulgated a regulation that adopts a permissible construction of the statute, a court must defer to that interpretation and not impose its own.[56]   The Supreme Court has indicated this rule is especially strong in the context of the TILA and Regulation Z, where even official staff interpretations of the statute and regulation should control unless shown to be irrational.[57]   Regulation Z § 226.23(d)(1) recognizes the statutory mandate that a lender's security interest is void when a borrower rescinds a loan transaction.  Subparagraph (d)(4) restates the power given to courts under § 1635(b) to modify the statutory procedures outlined in subparagraphs (d)(2) and (d)(3), including the power to modify the procedure to effect the rescission.  Rather than being in conflict with TILA § 1635(b), Regulation Z § 226.23(d)(4) supports the court's authority to

---

[53]69 F.R. 16769-03 (March 31, 2004).

[54]*Id.* at 16772.

[55]Significantly, the new language as originally proposed read: "The consumer's substantive right to rescind under § 226.23(a)(1) and § 226.23(d)(1) is not affected by the procedures referred to in § 226.23(d)(2) and (3), or the modification of those procedures by a court." 68 F.R. 68799 (proposed December 10, 2003).  This version, which might support the Ramirez's position, was *not* the one ultimately adopted.

[56]*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-844 (1984).

[57]*Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559-70 (1980); *Davison v. Bank One Home Loan Serv.*, No. 01-2511-KHV, 2003 WL 124542, at *5 (D. Kan. Jan. 13, 2003).

modify the rescission process, including allowing the lender to retain its security interest pending tender

of the loan proceeds by the borrower.  This manner of modification is especially relevant in the

bankruptcy  context.  The Court finds nothing irrational about Regulation Z § 226.23(d)(4).[58]

Moreover, the legislative history regarding the amendment to § 1635(b) supports the

modification of the rescission process in the context of a bankruptcy case, noting:

> Upon application by the consumer or the creditor, a court is authorized
> to modify this section's procedures where appropriate.  **For example,
> a court might use this discretion in a situation where a consumer
> in bankruptcy or wage earner proceedings is prohibited from
> returning the property.**  The committee expects that the courts, **at
> any time during the rescission process**, may impose equitable
> conditions to insure that the consumer meets his obligations after the
> creditor has performed his obligations as required under the Act.[59]

As one court noted, the legislative history's reference to bankruptcy is significant and illustrates

Congress intended to allow courts to condition the voiding of a lien or security interest on payment by

the debtor:

> Had Congress intended otherwise, there would be no reason to
> mention bankruptcy, as a creditor's secured interest in a debtor's
> homestead would be void upon rescission, relegating the debtor's
> remaining obligations to an unsecured, often dischargeable status. The
> net effect, then, would be that a debtor receives the entire benefit of the
> credit transaction, often substantial sums of money or what amounts to
> a free house, while the creditor receives nothing, which would be
> contrary to the purpose of rescission.[60]

---

[58]*Cf. In re Stanley*, 315 B.R. at  615-16 (concluding that Regulation Z § 226.23(d)(4) is manifestly contrary to
TILA § 1635(b) and an irrational construction that did not bind that court).

[59]S. Rep. No. 96-368 at 29 (1980) (emphasis added).

[60]*In re Stanley*, 315 B.R. at 615 (citing *In re Webster*, 300 B.R. at 804 (rejecting debtor's "free house"
theory)).

In this case, the Ramirezes are attempting to use an equitable remedy to create a legal right to effectively strip Household's mortgage lien, a right they are not accorded under bankruptcy law.[61] Thus, the bankruptcy court Order requiring Mr. Ramirez to satisfy his reciprocal tender obligation prior to release of Household's mortgage is precisely the type of equitable condition contemplated by Congress. To hold otherwise would disproportionately punish Household for a technical violation of the TILA while giving the Ramirezes a windfall in excess of $80,000.

Moreover, in this case, in *Quenzer III*, and in the majority of cases allowing the rescission process to be modified or conditioned, rescission was initiated after the initial three-day period--often years after. That circumstance factors highly in the majority decisions, and clearly alters the apparent equities between the parties. As the court stated in *Quenzer III*,

> This court cannot accept the proposition that strict enforcement of TILA justifies rendering a debt in the amount at issue here [$48,000 or more] unpaid and completely unsecured, given the passage of time and other circumstances present. Even though the defendant violated TILA, automatically relegating its entire claim to unsecured status under these circumstances would be completely inequitable and would exact a penalty entirely disproportionate to its offense.[62]

In *Quenzer III*, the court recognized that courts should analyze all the surrounding circumstances in determining the appropriate effect of the borrower's decision to rescind rather than disproportionately punishing the lender within the scope of remedies otherwise provided in the TILA. In this case, the bankruptcy court did precisely that by preserving the rights of the Ramirezes and

---

[61]11 U.S.C. § 1322(b)(2) (debtor's Chapter 13 plan may not modify rights of a holder of a security interest in debtor's principal residence).

[62]288 B.R. at 889.

Household with respect to rescission under the TILA and Regulation Z.  The bankruptcy court's exercise of equitable authority means that the Ramirezes can exercise their rescission rights without being confronted with the dilemma of a lump sum payment to the lender that would otherwise be due under the TILA.  It also avoids the Ramirezes receiving the so-called "free house" benefit, while Household receives little or nothing.  Instead, the bankruptcy court structured repayment after adjustment of Household's claim, preserving the lender's expectation of being paid the reciprocal tender by allowing Household to retain its mortgage lien.

Finally, the Court notes that Mrs. Ramirez argues that Household cannot retain its mortgage lien because the Kansas homestead provision prevents the Court from so ordering.  The Ramirezes did not present this argument to the bankruptcy court, and will not be allowed to raise it here, for the first time on appeal.[63]

### Conclusion

The Court concludes that Household's mortgage lien was not automatically void upon the Ramirezes giving notice of rescission to Household.  In so ruling, the Court joins the majority of courts in concluding that TILA § 1635(b) and Regulation Z § 226.23(d)(4) authorize it to modify the procedure for rescission by conditioning the avoidance of a lender's mortgage lien on tender of the post-rescission amount by the borrower.  This comports with Congressional intent that "the courts, at any time during the rescission process, may impose equitable conditions to insure that the consumer

---

[63]The Court notes that Mrs. Ramirez cites the Kansas Constitution and its prohibition against alienation of homestead property "without the joint consent of the husband and wife."  In this case, however, Mrs. Ramirez clearly "consented" to the execution of the mortgage, having signed the mortgage document granting Household a security interest in the property.  Moreover, she received a direct benefit from the loan, including the payoff of an existing obligation secured by the property of more than $87,000.

meets his obligations after the creditor has performed his obligations as required by the act."[64]  The

bankruptcy court's decision to allow Household to retain its mortgage lien subject to payment of Mr.

Ramirez's post-rescission obligation, as calculated by the bankruptcy  court, is affirmed.[65]

**IT IS THEREFORE ORDERED BY THE COURT** that the Order of the bankruptcy

court dated May 28, 2003, is AFFIRMED.

IT IS SO ORDERED.

Dated this 9th day of September 2005.

 S/ Julie A. Robinson_____
Julie A. Robinson
United States District Judge

---

[64]S. Rep. No. 96-368, at 29 (1980).

[65]The Ramirezes ask that the Court certify the question for immediate appeal to the Tenth Circuit pursuant
to Fed. R. Civ. P. 54(b).  Because the Court affirms the decision of the bankruptcy court, such certification, assuming
it is appropriate, is not necessary.